UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROMMEL BURDINE,

                                    Petitioner,

         v.
                                                      9:18-CV-1132
                                                      (TJM)
M. THOMS, Superintendent,

                                    Respondent.

_____

APPEARANCES:                                    OF COUNSEL:

ROMMEL BURDINE.
Petitioner, pro se
14-B-1141
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. LETITIA JAMES                              JAMES GIBBONS, ESQ.
Attorney for Respondent                         Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

THOMAS J. McAVOY
Senior United States District Judge

**DECISION and ORDER**

I.      **INTRODUCTION**

        Petitioner Rommel Burdine, proceeding pro se, seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  *See* Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Petitioner's

Memorandum of Law in Support of the Habeas Petition ("P. Mem."); Dkt. No. 1-2, Exhibits

("Ex.").  Respondent filed a response in opposition to the petition and pertinent records from

petitioner's state court proceedings.  Dkt. Nos. 8-9, State Court Records; Dkt. No. 10,

Response; Dkt. No. 10-1, Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."). Thereafter, petitioner filed a reply. Dkt. No. 12, Traverse.

For the reasons that follow, the petition is denied and dismissed.

## II.   RELEVANT BACKGROUND

### A.   Overview

The facts associated with the circumstances leading up to, and as a result of, the criminal trial are not in dispute. Specifically,

> [Petitioner was] convict[ed] . . . , after a jury trial, of two counts of criminal possession of a controlled substance in the third degree (Penal Law § 220.16(1), (12)) and criminally using drug paraphernalia in the second degree (§ 220.50(3)). . . . [A]fter the [petitioner] was pulled over, the responding police officers recovered two cell phones from the vehicle's glove box and one of them looked through certain text messages on those phones.
>
> . . .
>
> [Petitioner] was discovered driving a vehicle that contained a wholesale brick of crack, seven individually bagged ecstasy-analogue tabs, a scale, and empty baggies. Furthermore, [petitioner] demonstrated consciousness of guilt by initially fleeing from police; over $600 in cash was recovered from [petitioner's] person; and [petitioner's] passenger testified that [petitioner] was a drug dealer who was dealing out of his car.

*People v. Burdine*, 147 A.D.3d 1471, 1472 (4th Dep't 2017).

Petitioner contends that the trial court erred during the pre-trial proceedings. Specifically, the court failed to suppress the text messages retrieved from the two phones the officers seized, prior to receiving a warrant, from the car petitioner was driving. Pet. at 3; P. Mem. at 3-6.[1]

---

[1] Citations to the parties's submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

## B.     Pre-Trial Proceedings

On February 27, 2014, petitioner was represented at a suppression hearing.  Dkt. No. 9 at 31-97.  Officer Decker and his partner, Officer Ettinger, both testified about the events leading up to petitioner's arrest: the vehicle petitioner was driving was stopped for not having a light bulb illuminating the license plate.  *Id.* at 49-50, 72-73.  After turning on the sirens, petitioner's car sped up, pulled over, and then sped off again when the officer got out of the cruiser to approach it.  *Id.* at 50-51, 60-61, 73-74, 83-84.

When officers again approached the parked vehicle, petitioner provided a false name – his brother's – to the officers; however, his brother had an outstanding warrant for his arrest.  Dkt. No. 9 at 51-52, 74-75.  Petitioner was placed under arrest and, upon his exit from the vehicle, Decker "saw small pieces of beige chunky substance on the driver's seat . . . consistent with crack cocaine."  *Id.* at 52; *see also id.* at 64, 75, 85-86.  Petitioner was then searched.  *Id.* at 75.  He reported that he was unemployed; however, officers found a significant amount of money in his front pocket. *Id.* at 53-54, 57-58, 75.

There was a passenger in the front seat as well, who reported that there were drugs locked in the glove compartment.  Dkt. No. 9 at 54, 75.  The passenger indicated he owned the vehicle and provided officers with the key to the compartment.  *Id.* at 54, 64-65, 75-76, 87-88.  Inside, officers found a

> clear plastic sandwich bag with a lot of beige chunky substance, a digital scale, with a white residue on the surface [which tested positive for cocaine].  A box of . . . plastic sandwich bags.  And inside the box there was another clear plastic sandwich bag with seven individually wrapped chunks of brown substance [which tested positive for heroin].

Dkt. No. 9 at 55-56; *see also id.* at 77.

3

There were also two cell phones recovered from the center console. Dkt. No. 9 at 56. The officers looked at the messages and calls because they "can be deleted from outside areas. And it's possible to get rid of evidence that is great for [law enforcement's] case or possibly could help the case, or even help the [petitioner]." *Id.* at 92-93. Prior to reading the messages and checking the call log, the officers did not secure a search warrant. *Id.* at 93. The court reserved decision. *Id.* at 96.

On March 5, 2013, in a written decision, the court denied petitioner's motion to suppress the cell phone evidence. Dkt. No. 8 at 79-83.

## C.     Direct Appeal

On July 11, 2016, petitioner filed a counseled direct appeal with the Appellate Division, Fourth Department. Dkt. No. 8 at 3-56. One of the arguments petitioner asserted was that the trial court erred in failing to suppress the cell phones and resulting evidence gathered from the text messages therein. *Id.* at 16-20. The People opposed petitioner's appeal. *Id.* at 305-51; *see id.* at 324-27 (specifically arguing that the trial court properly denied the suppression of the search of petitioner's cell phones).

On February 10, 2007, the Fourth Department "agree[d] with [petitioner] that the court erred in denying his motion to suppress certain text messages collected from his cell phones," as the officer's actions "constituted an illegal warrantless search of [petitioner's] cell phones, thereby mandating suppression of the text messages." *Burdine*, 147 A.D.3d at 1472.[2] However, the Fourth Department ultimately held "that the error is harmless inasmuch as the evidence of [petitioner's] guilt is overwhelming, and there is no reasonable possibility

---

[2]  A copy of the decision was also included in the State Court Records. *See* Dkt. No. 8 at 371-374.

4

that the admission of the text messages might have contributed to [petitioner's] conviction," given petitioner's misrepresentations to police, petitioner's actions initially fleeing the scene of the traffic stop, petitioner's control of a car containing various drugs and drug paraphernalia, and the passenger's testimony that petitioner was a drug dealer. *Id., on rearg.,* 149 A.D.3d 1626 (4th Dep't 2017) (granting reargument in part and modifying court's prior order to delete one sentence and replace another). Accordingly, the Fourth Department unanimously affirmed the judgment. *Burdine*, 147 A.D.3d at 1474.

On March 20, 2017, petitioner filed a counseled application for leave to appeal with the New York Court of Appeals. Dkt. No. 8 at 389-398. The People opposed the application. *Id.* at 399-400, 406. On June 8, 2017, the Court of Appeals denied leave to appeal. *People v. Burdine*, 29 N.Y.3d 1076 (2017); *see also* Dkt. No. 8 at 412.

## III.  PRESENT PETITION

Petitioner contends that he is entitled to federal habeas corpus relief because his Fourth Amendment rights were violated with the police searched the two cell phones found in the car he was driving without a warrant. P. Mem. at 3. Petitioner further points to the Fourth Department decision to support his arguments, and then proceeds to contend that the error was harmful "because the prosecutor use[d] the illegal messages to corroborate the accomplice testimony stating that the phones show you what type of relationship [petitioner had] with people[.]" *Id.* at 5-6.[3]

Respondent opposes the petition. *See* R. Mem. Specifically, respondent argues that petitioner's Fourth Amendment claims are not cognizable on habeas review. R. Mem. at 8-

---

[3]  While petitioner filed a reply, it did not include any arguments, just a portion of the transcript which had also been provided to the Court by respondent. *See* Traverse.

12.

## IV.    DISCUSSION

Petitioner's Fourth Amendment claim is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976).  Pursuant to *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief[.]"  428 U.S. at 482; *accord Graham v. Costello*, 299 F.3d 129, 133-134 (2d Cir. 2002).  The bar created by the Supreme Court in *Stone* "applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause[.]"  *McCray*, 2017 WL 3836054, at *6 (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam)).

The only requirement under *Stone* is that the state provide a petitioner the "opportunity" to litigate a Fourth Amendment claim.  *McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).  Therefore, habeas review is only available: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *accord Hirsh v. McArdle*, 74 F. Supp. 3d 525, 532-533 (N.D.N.Y. 2015).

The Second Circuit has recognized that New York provides adequate procedures to redress Fourth Amendment violations.  *Capellan*, 975 F.2d at 70 & n.1 (citing a motion to suppress evidence, pursuant to CPL § 710.10 *et seq*., as a "facially adequate" and "approved" procedure for adjudicating alleged Fourth Amendment violations); *see also, e.g,*

6

*Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013)

(citing CPL § 710.10 and finding that the Second Circuit has explicitly approved New York's

procedure for litigating Fourth Amendment claims).

> [O]nce it is established that a petitioner has had an opportunity to
> litigate his or her Fourth Amendment claim (whether or not he or
> she took advantage of the state's procedure), the court's denial of
> the claim is a conclusive determination that the claim will never
> present a valid basis for federal habeas relief.

*Graham*, 299 F.3d at 134.

The record reflects that petitioner took full advantage of his opportunity to completely

adjudicate this manner in state court. *See* Dkt. No. 9 at 31-97 (suppression hearing

transcript). At the conclusion of the hearing, a decision and order, with a detailed discussion

of the facts and analysis of the relevant law, was issued. Dkt. No. 8 at 79-83. The decision

was examined on direct appeal by the Fourth Department. *Burdine*, 147 A.D.3d at 1472.

The Fourth Department agreed with petitioner and concluded that the trial court erred in

failing to suppress the evidence; however, the Fourth Department also held that the error

was harmless and ultimately affirmed petitioner's conviction. *Id.* at 1472, 1474, *on rearg.,*

149 A.D.3d 1626. Finally, the Court of Appeals subsequently denied petitioner's application

for leave to appeal to that court. *Burdine*, 29 N.Y.3d at 1076.

Moreover, petitioner asserts no basis for concluding that he was precluded from using

this procedure due to "an unconscionable breakdown in the underlying process." *Capellan*,

975 F.2d at 70. Here, petitioner merely reiterates the arguments he previously proffered, that

the text messages submitted into evidence from the illegally seized cell phones should be

suppressed. This was the same argument presented in his counseled brief on direct appeal.

However, "[a] 'mere disagreement with the outcome of a state court ruling is not the

equivalent of an unconscionable breakdown in the state's corrective process,' and thus is insufficient to give this Court authority to review Fourth Amendment claims." *Williams v. Gonyea*, No. 9:16-CV-0460 (JKS), 2017 WL 4990645, at *4 (N.D.N.Y. Oct. 31, 2017) (quoting *Capellan*, 975 F.2d at 72).

Accordingly, because the state has provided corrective procedures to address petitioner's alleged Fourth Amendment violation, and petitioner was not precluded from availing himself of that mechanism, petitioner's claim is not cognizable.

Petitioner contends that the Fourth Department's holding that, despite the fact that the text messages should have been suppressed, the trial court's error was harmless entitles him to habeas relief. P. Mem. at 5-6. However, that argument has no impact on the instant analysis.

> A habeas claim based on a state court's determination that the introduction of evidence from a Fourth Amendment violation was harmless error is inseparable from the underlying Fourth Amendment claim. Such a determination does not implicate a personal constitutional right distinct from the underlying claim. Thus, for purposes of the *Stone v. Powell* rule, a habeas petitioner's claim that a state appellate court improperly found a Fourth Amendment violation to be harmless does not have a separate identity and may not be raised in a habeas petition in federal court.

*Gilmore v. Marks*, 799 F.2d 51, 55 (3d Cir. 1986); *see also Eastman v. Poole*, No. 1:07-CV-1423, 2007 WL 3006030, at *2 (E.D.N.Y. Oct. 10, 2007) (holding that the Appellate Division's ruling that the trial court's incorrect admission of evidence was harmless error "was simply a part of the resolution of his Fourth Amendment claim, and as such does not provide a basis for habeas relief under *Powell*.").

Accordingly, petitioner is not entitled to any federal relief on his claims.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[4] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 5, 2019

Thomas J. McAvoy
Senior, U.S. District Judge

---

[4] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).